No. 637         July 8, 2026         269

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAYTON LEROY ROGERS,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR8800355, CR8800356, CR8800357, CR8800358,
CR8800359, CR8800360; A182696 (Control),
A182697, A182698, A182699, A182700, A182701

Todd L. Van Rysselberghe, Judge.

Argued and submitted July 23, 2025.

Richard L. Wolf argued the cause and filed the briefs for appellant.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Kamins, Presiding Judge, Jacquot, Judge, and Armstrong, Senior Judge.

KAMINS, P. J.

Affirmed.

**KAMINS, P. J.**

This is an appeal of a life without parole (LWOP) sentence. Defendant was previously convicted of aggravated murder and sentenced to death. After the Oregon Supreme Court determined that that sentence was unconstitutional, *State v. Rogers*, 368 Or 695, 499 P3d 45 (2021) (*Rogers IV*), defendant was sentenced to LWOP for first-degree murder under ORS 163.107, the first-degree murder sentencing statute. Defendant raises three assignments of error as to that sentence. First, defendant argues that the trial court erred in sentencing him under the first-degree murder sentencing statute instead of the aggravated murder statute. Second, defendant argues that the trial court erred by allowing a waiver he made in an earlier sentencing proceeding, in which he waived objections to LWOP as a sentencing option, to apply in his most recent sentencing proceeding. Third, defendant argues that the trial court erred in rejecting his argument that the addition of the LWOP sentencing option to the aggravated murder sentencing scheme violates the Oregon Constitution. We agree with defendant that the trial court erred in sentencing defendant under the first-degree murder sentencing statute, but conclude that the error was harmless. We otherwise conclude that the trial court did not err. Accordingly, we affirm.

## I.  BACKGROUND

Before addressing defendant's assignments of error, we first discuss the legal background around criminal homicide and the death penalty, as well as defendant's prior direct appeals to the Oregon Supreme Court.

A.  *Criminal Homicide in Oregon*

Prior to the passage of Senate Bill (SB) 1013 (2019),[1] a bill that restructured Oregon's murder crimes and sentences, there were two categories of murder in Oregon: murder and aggravated murder. Murder was defined to include certain forms of criminal homicide, ORS 163.115(1) (2013), *amended by* Or Laws 2019, ch 635, § 4, and "aggravated

---

[1] The parties refer to SB 1013 as a shorthand for the session law it established, Or Laws 2019, ch 635. For ease of reading, we do so as well. For the full text of SB 1013, see https://olis.oregonlegislature.gov/liz/2019R1/Downloads/MeasureDocument/SB1013/Enrolled.

murder" was defined as murder "committed under, or accompanied by," one of 12 enumerated aggravating circumstances. ORS 163.095 (2013), *amended by* Or Laws 2019, ch 635, § 1. Aggravated murder was, and is, the only crime in Oregon punishable by death.

Through SB 1013, the legislature amended the definition of aggravated murder in ORS 163.095, removed the crime of murder, and added two new crimes: first-degree murder, ORS 163.107, and second-degree murder, ORS 163.115. Or Laws 2019, ch 635, §§ 1, 3, 4. The bill redefined "aggravated murder" to include different forms of murder, most of which are more serious forms of murder than those previously classified as "aggravated murder." SB 1013 also added the crime of "first-degree murder," a crime that consists of all 12 previously enumerated aggravating circumstances. Finally, SB 1013 redefined "murder" as "second-degree murder." Thus, conduct that previously was "murder" is now "second-degree murder," and conduct that previously was "aggravated murder" is now "first-degree murder."

B.  *Murder Sentencing Statutes*

Additionally, SB 1013 amended the consequences for different categories of murder. While aggravated murder remains subject to the death penalty, first-degree murder (*i.e.*, the conduct that *previously* constituted aggravated murder) is presumptively punishable by a life sentence *with* the possibility of parole after 30 years (LWPP). ORS 163.107(2)(a). A court may, however, sentence a person convicted of first-degree murder to LWOP, provided that person is at least 18 years old and the court "state[s] on the record the reasons for imposing the sentence." ORS 163.107(2)(b). A defendant convicted of first-degree murder has a right to a jury for the sentencing proceeding only if the state seeks the imposition of an enhanced sentence of LWOP. *See State v. Bement*, 350 Or App 198, 209, ___ P3d ___ (2026) (construing ORS 163.107(2)(a) as setting forth a presumptive "statutory maximum" sentence of LWPP and allowing the sentencing judge to impose an enhanced LWOP sentence after following the procedure set forth in ORS 136.760 through 136.792 for submitting enhancement facts to a jury and imposing an enhanced sentence based on those facts).

SB 1013 did not significantly alter the procedure for sentencing aggravated murder. At the time of defendant's conviction, a person convicted of aggravated murder could be sentenced to only LWPP or death. ORS 163.150 (1987). Shortly after defendant's conviction, that statute was amended to include LWOP as a sentencing option, an option that remains to this day. ORS 163.150 (1989). If a defendant is found guilty of aggravated murder, the court "shall" conduct a separate sentencing hearing before a jury "as soon as possible." ORS 163.150(1)(a).[2] The jury must answer a number of questions related to whether the death penalty should be imposed. In answering the death penalty questions, the jury may consider any mitigating evidence provided by the defendant, and the state must prove the issues to the jury beyond a reasonable doubt. ORS 163.150(1)(c), (d).[3] If, and only if, the jury unanimously agrees affirmatively on all the questions, the judge "shall sentence the defendant to death." ORS 163.150(1)(f). If the jury reaches a negative finding on any of the questions, the court must sentence the defendant to LWOP, unless 10 or more members of the jury find "sufficient mitigating circumstances to warrant [LWPP]," in which case, the court must sentence the defendant to LWPP. ORS 163.150(2)(a), (3)(b).

C.   *Death Penalty Review and Petitioner's Prior Reviews*

A person sentenced to death is entitled to automatic and direct review of his sentence by the Oregon Supreme Court. ORS 138.052(1). If the reviewing court finds error in the sentencing proceeding, the court may set aside the death sentence and remand the case to the trial court for resentencing. ORS 138.052(2)(a). The court may not reverse the conviction on the basis of a sentencing error. *Id.* On remand, the sentencing court has two options: it may (1) sentence the defendant to LWPP, or (2) impanel a new sentencing jury and go through the procedure outlined in the previous

---

[2] A defendant, as here, may waive their right to a jury for the sentencing phase.

[3] SB 1013 amended the death penalty questions by removing a question related to the probability of future violence and making all the remaining questions ones that must be found beyond a reasonable doubt, but otherwise did not alter the questions. That was the sole change SB 1013 made to the procedure for sentencing aggravated murder, ORS 163.150.

section. ORS 138.052(2)(A), (B). The new sentencing jury will determine if the defendant is sentenced to LWPP, LWOP, or death. SB 1013 did not amend the automatic and direct review provisions, or the remand procedures.

Defendant received this type of automatic and direct review four times, and on each occasion his death sentence was vacated. On its first review, the Supreme Court held that the sentencing proceeding was erroneously conducted without all the necessary jury death penalty questions. *State v. Rogers*, 313 Or 356, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993) (*Rogers I*). In its second review, the Supreme Court vacated and remanded on three grounds: (1) the trial court erred by refusing defendant's request to instruct the jury on LWOP; (2) the trial court improperly limited defendant's allocution; and (3) the trial court improperly limited expert testimony. *State v. Rogers*, 330 Or 282, 4 P3d 1261 (2000) (*Rogers II*). In its third review, the Supreme Court vacated and remanded on two grounds: (1) the trial court erred in impaneling an anonymous jury without providing sufficient reasons; and (2) the trial court erred in allowing certain expert testimony. *State v. Rogers*, 352 Or 510, 288 P3d 544 (2012) (*Rogers III*).

In its fourth review, the Supreme Court held that, based on its recent decision in *State v. Bartol*, 368 Or 598, 496 P3d 1013 (2021), defendant's death sentence was unconstitutional. *Rogers IV*, 368 Or at 700-01. Because the analysis in *Bartol* and *Rogers IV* is germane to our resolution of this case, we next discuss those opinions in some depth.

1. Bartol

In *Bartol*, 368 Or at 600, the defendant was convicted of aggravated murder for killing a person in custody and sentenced to death. On automatic and direct review, after the parties submitted their briefs but prior to the Supreme Court ruling, the legislature passed SB 1013. *Id.* at 601. The change to the definitions of aggravated murder and first-degree murder in SB 1013 meant that defendant's criminal *conduct* no longer constituted aggravated murder, but rather first-degree murder. *Id.* at 601 (noting that SB 1013 "reclassified all the forms of murder that previously had been 'aggravated

murder' as 'murder in the first degree'"). SB 1013, however, by its terms only applied to sentences imposed *after* its passage, despite applying to conduct committed before or after its passage. Or Laws 2019, ch 635, § 30 (subject to exceptions not relevant here, law applies "to crimes committed before, on or after the effective date of this 2019 Act that are the subject of sentencing proceedings occurring on or after the effective date of this 2019 Act"). As mentioned, first-degree murder is not subject to the death penalty.

The Supreme Court held that, in light of the passage of SB 1013, defendant's death sentence was unconstitutionally disproportionate to the severity of his criminal conduct. *Id.* at 625. The Supreme Court first noted the legislative intent behind SB 1013 was to "ensure that Oregon's death penalty statutes do not violate the Eighth Amendment * * * which prohibits cruel and unusual punishments, including disproportionate punishments" by reserving the death penalty for "the 'worst of the worst.'" *Id.* at 602-03 (quoting Testimony, Senate Committee on Judiciary, SB 1013, Apr 1, 2019, Ex 24 (statement of Paul J. De Muniz)). The Supreme Court also noted that SB 1013, by its terms, applied only to sentences imposed on or after September 29, 2019, and thus, did not apply to defendant's sentence. *Id.* at 605.

After determining that defendant could bring a challenge to the death penalty, as applied to him, the court proceeded to analyze, extensively, the Eighth Amendment's prohibition on cruel and unusual punishments, and Article I, section 16's similar prohibition on disproportionate sentences. *Id.* at 613-23. The court concluded that both provisions, similarly, had case law that established: (1) each provision prohibits disproportionate sentences; (2) whether a sentence is disproportionate is to be determined based on current societal standards; (3) legislative enactments are strong indicators of current societal standards, but are not dispositive; and (4) courts may also consider how the gravity of the crime compares to the severity of the sentence and how the severity of the sentence compares to the severity of the sentences imposed for other crimes. *Id.* at 613.

The court also recognized that there are "special rules" and "special proportionality requirements for the

death penalty" that the United States Supreme Court set out, and the Oregon Supreme Court adopted. *Id.* at 621. Among those rules is that, "[b]ecause death is the most serious punishment, it must be reserved for the most serious offenses." *Id.* at 622.

Applying those rules to the defendant's case, the Supreme Court found that, based on SB 1013, the legislature determined that defendant's conduct was not "the worst of the worst." *Id.* at 623. In addition, the Court reasoned that, because SB 1013 applied to conduct committed both before and after its effective date, the legislature did not regard conduct committed before its effective date as more culpable than conduct committed after. *Id.* at 624. Finally, because SB 1013 only affected defendants whose sentences were imposed after its effective date, it would lead to the result, in this case, of a defendant being executed solely because of when he committed his crime, while a person who committed identical conduct would not be sentenced to "that unique and ultimate punishment." *Id.* at 625 ("Maintaining [defendant's] death sentence would allow the execution of a person for conduct that the legislature has determined no longer justifies that unique and ultimate punishment, and it would allow the execution of a person for conduct that the legislature has determined is no more culpable than conduct that should not result in death."). Indeed, the Supreme Court "emphasize[d]" several times in its opinion that its "decision in this case is based on *special proportionality rules* that apply to the death penalty, which are the result of the unique differences between the death penalty and all other punishments." *Id.* at 625 n 9 (emphasis added).

   2.   Rogers IV

In *Rogers IV*, the Supreme Court applied the rationale from *Bartol* to defendant here, after defendant sought direct and automatic review of his death sentences that were imposed in his fourth penalty-phase trial. 368 Or at 698. Just as in *Bartol*, while briefing was ongoing in *Rogers IV*, the legislature enacted SB 1013. *Id.* Defendant's criminal conduct—intentionally killing and intentionally killing in the course of certain felonies—without more, could no longer constitute aggravated murder under SB 1013's new

definitions of the crime and could only comprise first-degree murder. *Id.* at 699 ("The conduct that defendant was found guilty of committing is no longer classified as aggravated murder, and it is no longer punishable by death.").

The *Rogers IV* court also noted that it had recently held, in *Bartol*, that the death penalty was unconstitutional as applied to individuals whose criminal conduct, following passage of SB 1013, no longer rose to the level of aggravated murder. *Id.* ("SB 1013 reclassified all of those theories of aggravated murder as first-degree murder."). The *Rogers IV* court then vacated and remanded defendant's sentence "for the same reason" as in *Bartol*: the death sentence violated Article I, section 16. *Id.* at 701.

## II.  FACTS

With that background in mind, we turn to the facts of this case. The relevant facts are not in dispute. In 1989, defendant was found guilty of 13 counts of aggravated murder arising out of the killing of six women, and he was sentenced to death. As previously discussed, on three separate occasions, the Supreme Court vacated and remanded defendant's sentence based on errors in the sentencing proceedings, and, on remand, defendant was resentenced to death. On its fourth automatic review, the Supreme Court held that a death sentence for defendant's conduct would violate Article I, section 16, of the Oregon Constitution (proportionality clause), because such conduct was no longer punishable by death due to subsequent amendments to the relevant statutes.

### A.  *Defendant's Fifth Sentencing Proceeding*

On remand, the parties disputed what procedure should govern the sentencing proceeding. Defendant advocated for ORS 138.052, the statute dictating how the trial court should proceed on remand from the Oregon Supreme Court's direct review. The state argued that ORS 163.107, the new first-degree murder sentencing statute, should apply.

The trial court concluded that the first-degree murder sentencing statute, ORS 163.107 (and SB 1013, more

broadly) would apply to defendant's upcoming sentencing hearing.

> "THE COURT:    The challenge[s] I see here in this case are two-fold: First, [] after reading the last submission from your office, I was somewhat unsure as to where the starting line is, so to speak, because up until April 1st [] both sides were in agreement that this sentencing was [] going to be subject to the scheme of SB 1013.
>
> "And then defense raised an alternative starting line, which is the old Aggravated Murder statute. [T]here's [an] unavoidable difference or undisputable difference between Aggravated Murder and Murder in the First Degree.
>
> "And I understand the [] arguments that get into the details of the punishments of the two crimes, but these are two different crimes. And the Oregon Supreme Court reclassified the offenses that the defendant has been convicted of.
>
> "It used the term 'reclassified,' which is a term, by the way, I have ever—I guess it's as good as any, but it is somewhat unique in the decision that the Supreme Court made.
>
> "But, in any event, it's direction from the Supreme Court that this sentencing procedure—proceeding *is about making a lawful and appropriate sentencing under—for Murder in the First Degree.*"

(Emphasis added.) Later, at sentencing, the sentencing court reaffirmed its prior ruling that SB 1013—specifically, ORS 163.107, the first-degree murder sentencing statute—would apply:

> "[THE COURT:]    Furthermore, the Legislature intended for SB 1013 to apply to all sentencings occurring after its effective date. It seems doubtful that the Legislature intended to preserve the right to have a jury determine sentencing for those in defendant's position while denying that right to others.
>
> "For these reasons, the Court will adhere to its prior ruling regarding application of ORS 163.107 [(the first-degree murder sentencing statute enacted by SB 1013)]."

The trial court also found that a prior *ex post facto* waiver defendant previously made, in which he waived challenges to an LWOP sentence, was applicable to defendant's

current sentencing proceeding.[4] That waiver permitted defendant's previous sentencing jury to consider LWOP as a sentencing option, despite LWOP not being available at the time defendant committed his crime. At that time, the only sentencing options for aggravated murder were LWPP or death.

In addition to discussing the issue of what sentencing structure should govern, the parties also discussed whether the jury or the court would act as factfinder in the sentencing phase. Defendant had explicitly waived his right to have a jury decide factual issues in his most recent sentencing hearing. Defendant also stated on the record that he would not seek a jury, even if the court reconsidered its rulings:

> "THE COURT: All right. Is—assuming the Court reconsidered the ruling made last year, are you asking for a jury?
>
> "[DEFENSE COUNSEL]: No.
>
> "THE COURT: All right.
>
> "[DEFENSE COUNSEL]: No. We're still waiving jury."

The court and defendant also discussed the possibility of the court sentencing him under ORS 138.052:

> "THE COURT: So what—if you feel that [ORS 138.052 is] the guiding authority, then why wouldn't it be appropriate for the Court to seat a jury and put those questions together—or to them?
>
> "[DEFENSE COUNSEL]: Well, it would not be inappropriate for the Court to do that. But in—prior to Senate Bill 1013, a defendant could waive jury in a—in a sentencing in a nondeath Aggravated Murder case.
>
> "So in cases in which a defendant was convicted or had pled guilty to Aggravated Murder, the State has indicated they were not seeking a death sentence and LWOP or [LWPP] were the only sentencing options, a defendant was always free to waive jury in those instances.

---

[4] We discuss the contents and applicability of defendant's waiver in greater detail later in this opinion.

"And so I think it's—it isn't incumbent upon a defendant to insist on a jury in order to assert what procedure should be employed. The Court can—can follow the same procedure that a jury would have to follow. And so the waiver, I don't—of jury, I don't think has any effect on what—what procedure, what proceedings should control here.

"THE COURT:   Okay. I'm following that, I think. But that would mean then if the Court agreed with your position that 138.052 was the appropriate guiding authority and your client decided to waive jury, then the Court would decide whether it's going to be, again, setting aside the *ex post facto* argument—

"[DEFENSE COUNSEL]:   Right.

"THE COURT:   —but then you're saying it would be appropriate for the Court to go forward and make the factual findings that are necessary to make a determination as to whether it's [LWPP] or [LWOP].

"[DEFENSE COUNSEL]: Yes. The Court could do that.

"THE COURT:   Okay."

The court then made findings necessary to impose an LWOP sentence under ORS 163.107 (first-degree murder), and also explicitly found that it would have sentenced defendant to LWOP under ORS 138.052.

"THE COURT: If the Court proceeded under ORS 138.052(2)(A), with defendant having waived his right to a jury, the Court would arrive at the same outcome."

The trial court then "merged" defendant's "counts" of aggravated murder into six counts of first-degree murder and sentenced defendant to six consecutive LWOP sentences under ORS 163.107 (first-degree murder sentencing statute). This appeal followed.

## III.   ANALYSIS

We review a sentence "to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence." ORS 138.105(7); *see State v. Capri*, 248 Or App 391, 394, 273 P3d 290 (2012) (applying statute).

A.   *ORS 163.107 vs. ORS 138.052*

On appeal, defendant first argues that the trial court erred in sentencing him under ORS 163.107 (first-degree murder sentencing statute) and not ORS 138.052 (aggravated murder sentencing on remand from direct review in Supreme Court).

Defendant argues that the Supreme Court's opinion from his most recent direct review, *Rogers IV*, 368 Or 695, mandates that he be sentenced under ORS 138.052, because the Supreme Court cited to that provision in remanding his case, and because nothing has changed his original conviction from aggravated murder to first-degree murder. The state argues that "the entire decision of *Rogers IV* was predicated on the fact that [the first-degree murder statute created by] SB 1013 applies to sentencing proceedings held after its effective date," and thus the trial court correctly applied it, rather than ORS 138.052, on remand. The state also notes that SB 1013 "reclassified" defendant's conviction to first-degree murder, so it was not error for the sentencing court to proceed under SB 1013's new first-degree murder sentencing statute.

From the start, the state's interpretation of *Rogers IV* and SB 1013 presents challenges: the case was not predicated "entire[ly]" on SB 1013 applying to sentencing proceedings held after its effective date. Rather, it was predicated on the fact that the "special rules" of a death penalty proportionality analysis meant that it was unconstitutional for identical conduct to be punished differently, when one potential punishment is death, and it was unconstitutional to apply the death penalty to conduct that was no longer considered by society to be the "worst of the worst." *See also State v. Wolfe*, 368 Or 38, 40, 486 P3d 748 (2021) (aggravated murder as classified by SB 1013 committed prior to enactment could still be prosecuted as aggravated murder post-enactment). In that regard, SB 1013 served solely as an *indicator* that society's views around the death penalty had changed—it did not reclassify defendant's conviction.

Additionally, there is no language in SB 1013 that permits a trial court to "reclassify" (or "merge" or somehow

reopen) an aggravated murder *conviction* into a first-degree murder conviction. *Bartol* spoke only about the legislature reclassifying "the forms of murder," 368 Or at 601, and *Rogers IV* discussed only reclassifying "theories" of murder, not convictions. 368 Or at 699. In fact, SB 1013 did not amend ORS 138.052 (the statute providing for direct review of an aggravated murder sentence and procedures for remand) *at all*. As mentioned, SB 1013 *amended* the aggravated murder statute by changing the types of conduct that constitute aggravated murder and *created* two new crimes: first-degree murder and second-degree murder. It did not provide a mechanism for a sentencing court, after a finding of guilt has already been made, to modify a conviction. Rather, it provided that a court "shall sentence a person *convicted* of murder in the first degree" under the first-degree murder statutes.

It stands to reason, then, that individuals who were previously convicted of aggravated murder, whose conduct no longer qualifies as aggravated murder under the new definition of that crime in SB 1013, did not automatically have their convictions "reclassified" as first-degree murder. For example, in *State v. Moon*, 338 Or App 545, 547, 566 P3d 667 (2025), the defendant was convicted of aggravated murder and first-degree kidnapping in 2003. In 2016, a federal district court granted him habeas relief on his first-degree kidnapping conviction and vacated that conviction. *Id.* Following the passage of SB 1013, defendant moved to modify the original judgment to reflect the district court's order and asked the circuit court to enter a conviction for first-degree murder pursuant to SB 1013. *Id.* Defendant did not otherwise seek to change his murder sentence. *Id.* at 554. The circuit court dismissed defendant's kidnapping conviction but otherwise kept his aggravated murder conviction intact. *Id.* at 551. We affirmed, reasoning that, although SB 1013 applied to sentencing, defendant was not seeking a change in his *sentence*, and SB 1013 did not entitle him, without more, to a new sentence on his aggravated murder conviction. *Id.* at 552.[5]

_____

[5] *See also Thompson v. Fhuere*, 372 Or 81, 89, 545 P3d 1233 (2024) (post-conviction court vacating petitioner's death sentence for aggravated murder convictions following *Bartol* but modifying the judgment "to impose a sentence of

Ultimately, *Moon* reaffirms that SB 1013, on its own, does not permit a trial court to enter a conviction for first-degree murder on an aggravated murder verdict. *Id.* at 554 ("[B]ecause defendant has identified no other source of authority entitling him to resentencing such that SB 1013 would apply, we conclude that the trial court was not required to enter a conviction for first-degree murder."). The Supreme Court understood that, as evidenced by the tagline in *Rogers IV* which states: "The *sentence* of death is vacated, and the case is remanded to the circuit court for *resentencing*." There is no language about defendant's *conviction* being reopened or altered in any way. The court thus erred in sentencing defendant under ORS 163.107, as defendant was never convicted of first-degree murder.

B. *Harmlessness*

Harmless error in the sentencing context "exists when 'it is clear that, on remand, the trial court lawfully could, and would, impose the same' sentence." *State v. Halfmoon*, 316 Or App 69, 73, 501 P3d 1126 (2021) (quoting *State v. Jenniches*, 187 Or App 658, 663, 69 P3d 771, *rev den*, 335 Or 578 (2003)). If defendant receives the relief that he seeks, he would be sentenced under ORS 138.052.[6] That statute instructs the sentencing court, following

_____

[LWOP] on each of petitioner's four *aggravated murder convictions*" (emphasis added)). That reasoning may have led to the result, on remand, of the indictment of the defendant in *Bartol* being amended from "aggravated murder" to "murder in the first degree." Judgment, Entered Feb 28, 2022, *State v. Bartol* (14C46903) (post-remand judgment convicting defendant of first-degree murder following stipulated amended indictment that was defendant's original indictment with "aggravated murder" crossed out and "murder in the first degree" written in).

[6] ORS 138.052, in full, provides:

"(1) The judgment of conviction and sentence of death entered under ORS 163.150 (1)(f) is subject to automatic and direct review by the Supreme Court. The review by the Supreme Court has priority over all other cases and shall be heard in accordance with rules adopted by the Supreme Court.

"(2) Notwithstanding ORS 163.150 (1)(a), after automatic and direct review of a conviction and sentence of death the following apply:

"(a) If a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court. No error in the sentencing proceeding results in reversal of the defendant's conviction for aggravated murder. Upon remand and at the election of the state, the trial court shall either:

"(A) Sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105 (1)(c); or

remand from the Supreme Court after a finding of preju-
dicial error, to hold a new sentencing proceeding governed
by ORS 163.150, the aggravated murder sentencing statute.
ORS 138.052(2)(a). On remand, the sentencing court must
either sentence the defendant to LWPP or empanel a jury
to determine if the defendant should be sentenced to death,
LWOP, or LWPP. ORS 138.052(2)(a)(A) - (B). The court, if
it empanels a jury, must follow the procedures laid out in
ORS 163.150(1), (2), (3), and (5), the aggravated murder sen-
tencing statutes. Under ORS 163.150(3), if the state elects
not to seek the death penalty, the trial court shall sentence
the defendant to LWOP unless the factfinder finds sufficient
mitigating circumstances to impose LWPP.

Defendant, however, explicitly waived his right to
have a jury decide factual issues in his most recent sentenc-
ing hearing and stated on the record that he would not seek
a jury, even if the court reconsidered its rulings. And the
court, in its rulings, did not find any mitigating circum-
stances to benefit defendant because it stated it would have
reached the same result under ORS 138.052. Thus, even if
the court proceeded under ORS 138.052(2)(a), with defen-
dant having waived his right to a jury, the court would have
acted as factfinder in place of the jury and arrived at the
same outcome. Accordingly, we conclude that the error had
no practical effect on defendant and was, therefore, harm-
less. *See State v. Powell*, 253 Or App 185, 192, 288 P3d 999
(2012), *rev den*, 353 Or 714 (2013) (affirming despite sen-
tencing error where remand "would not have the potential

---

"(B)  mpanel a new sentencing jury for the purpose of conducting a new
sentencing proceeding to determine if the defendant should be sentenced to:

"(i) Death;

"(ii) Imprisonment for life without the possibility of release or parole as
provided in ORS 163.105 (1)(b); or

"(iii) Imprisonment for life in the custody of the Department of
Corrections as provided in ORS 163.105 (1)(c).

"(b) The new sentencing proceeding is governed by the provisions of ORS
163.150 (1), (2), (3) and (5). A transcript of all testimony and all exhibits and
other evidence properly admitted in the prior trial and sentencing proceed-
ing are admissible in the new sentencing proceeding. Either party may recall
any witness who testified at the prior trial or sentencing proceeding and may
present additional relevant evidence.

"(c) The provisions of this subsection are procedural and apply to any
defendant sentenced to death after December 6, 1984."

to improve [the] defendant's position"); *State v. Jones*, 274 Or App 723, 730-31, 362 P3d 899 (2015) (concluding that sentencing error was harmless when it did not extend the length of defendant's sentence and thus "had no practical effect on [the] defendant").

C.   *LWOP Waiver*

Next, we address the applicability and effect of a previous waiver defendant made in an earlier sentencing proceeding in 1994. In that earlier proceeding, the trial court refused to permit the jury, under ORS 163.150(5)(a) (1993), to consider the option of sentencing defendant to LWOP and refused to permit defendant to file a written waiver of his rights under the *ex post facto* provisions of the state and federal constitutions, to allow the jury's consideration of that option. Those provisions, which protect against harsher punishment from statutes enacted after a crime was committed, were previously held to prohibit an LWOP sentence against people, like defendant, who were convicted of aggravated murder prior to LWOP as a sentencing option, because that option did not exist at the time they committed their crime. *State v. Wille*, 317 Or 487, 502-05, 858 P2d 128 (1993). We conclude that the application of ORS 163.150 (5)(a) to defendant, following *Bartol* and *Rogers IV*, no longer raises an *ex post facto* issue. To the extent that it does, however, pursuant to his previous waiver, defendant validly waived any objections to an LWOP sentence in his current sentencing proceeding.

Federal and state constitutional protections against *ex post facto* laws are implicated only when a change in the law "disadvantages defendants." *Wolfe*, 368 Or at 55. These types of laws typically "punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts." *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988).

Prior to *Bartol* and *Rogers IV*, the application of ORS 163.150(5)(a) to defendant raised an *ex post facto* issue. That is because it *elevates* the presumptive sentence for aggravated murder from LWPP to LWOP. *Wille*, 317 Or at 505. However, following *Bartol* and *Rogers IV*, death is no longer

a possible option for defendant's sentence. Thus, the proper comparison is between a sentencing structure with the death penalty or presumptive LWPP, and one with presumptive LWOP and LWPP. *See id.* (looking to "sentence structure" in determining *ex post facto* violation); ORS 138.052 (2)(a). In that comparison, removing death from the sentencing options does not disadvantage defendant for *ex post facto* purposes. *See Bartol*, 368 Or at 625 (acknowledging that death is both a "unique and ultimate punishment").

However, to the extent that there remains an *ex post facto* issue, we conclude that, under these facts, defendant validly waived any objections he might have to the law. In 1994, prior to his second sentencing hearing, defendant submitted a signed waiver to the sentencing court that he "unequivocal[ly]" waived his constitutional rights "with respect to [his] request that the jury *** be allowed to render a verdict of [LWOP]." In the waiver, defendant also declared:

> "I understand that, by tendering this waiver, I am *forever* giving up the right to object to application to me of the constitutional protections against *ex post facto* laws concerning the sentence of life imprisonment without possibility of release or parole."

(Emphasis added.) Thus, at least by the plain text of defendant's 1994 waiver, it applies "forever," at least concerning the LWOP sentence.

Defendant first argues that his waiver was invalid because it was conditioned on the sentencing court both accepting the waiver—which it did—and instructing the jury on LWOP—which it did not. Defendant points to the language

> "I understand that if the court accepts this waiver *and approves my request* [to instruct the jury on LWOP], that the court, if the jury so decides, will sentence me to a sentence of imprisonment for the rest of my life[.]"

(Emphasis added.) That language does not appear to indicate that the defendant's waiver of his rights was conditioned on the judge instructing the jury in the manner defendant requested. Rather, it appears that defendant's

waiver was conditioned on being accepted, and defendant's potential LWOP sentence was conditioned on not only the waiver, but also on the court approving defendant's plan for jury instructions, and the jury deciding that LWOP would be an appropriate sentence.[7]

Defendant also argues that his waiver was invalid because his waivers were all "proceeding specific" and did not carry over. In support of this argument, defendant points to a different *ex post facto* waiver he made more recently, in 2015. The fact that defendant continued to waive his *ex post facto* rights and executed an additional waiver 20 years later does not undermine the validity of his previous waiver. And in any event, that waiver, unlike the 1994 waiver, does not contain language about relinquishing the right "forever," and, instead, has much more specific language that the 1994 waiver lacks, including replacing the phrase "the jury" with "*this* jury" and "*this* sentencing jury." If anything, the specificity of the 2015 waiver implies that it has a different, and more specific, scope than the 1994 waiver.[8]

Finally, defendant also notes that the waiver of a jury trial does not foreclose the ability to demand a jury trial on remand. *State v. Barajas*, 262 Or App 364, 367, 325 P3d 772 (2014).

We disagree that *Barajas* controls. The rationale behind the holding in *Barajas* is that a defendant may be willing for a certain judge to try him, but less willing for the judge's successor (or for the same judge—who may be biased after a defendant's successful appeal—to try him again). *Id*. That rationale is less persuasive here, where less has changed from defendant waiving his right to be protected from *ex post facto* laws forever and waiving his right to have

---

[7] Following the Supreme Court's remand in *Rogers II*, the subsequent sentencing juries were instructed on the possibility of LWOP.

[8] Of course, just because a defendant makes an affirmative waiver of protection against *ex post facto* laws through a filing, as defendant did in 1994 and 2015, does not mean that such a filing is required, or has legal significance. A defendant may waive their right to such a protection simply by requesting, and then failing to object to, the *ex post facto* law at issue. *State v. McDonnell*, 329 Or 375, 390-91, 987 P2d 486 (1999) (the defendant who sought the application of LWOP sentencing option waived his state and federal protection against *ex post facto* laws because "he asserted no timely objection or claim that that statute *was* an *ex post facto* law" (emphasis in original)).

a jury determine his non-death sentence, as opposed to the hypothetical defendant in *Barajas* who doesn't know who his future judge will be or has specific judge-related concerns of judicial bias.[9]

D.   *Article I, Section 40*

Defendant next assigns error to the trial court "denying [defendant's] motion to declare [that] the Oregon Legislature's addition of the LWOP sentencing option in 1989 to the Oregon aggravated murder sentencing statute, ORS 163.105, contravened Article I, [section] 40[,] of the Oregon Constitution by improperly amending the constitution." It is not clear what ruling defendant is referring to, but he appears to mean the imposition of the LWOP sentence itself after defendant's counsel made an identical argument below.

Assuming that defendant has identified a reviewable ruling, defendant's argument is foreclosed by our decision in *State v. Myers*, 218 Or App 635, 180 P3d 759, *rev den*, 344 Or 671 (2008), in which we held that the legislature's amendment of ORS 163.105 to include LWOP sentences did not violate Article I, section 40. *Id.* at 640-41. Ultimately, defendant has not persuaded us that *Myers* should be overruled. *See State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017) (to overrule our precedents, we must be convinced that those cases are "plainly wrong," which is "a rigorous standard, satisfied only in exceptional circumstances").

IV.   CONCLUSION

In sum, defendant has not demonstrated reversible error in his sentencing proceeding. To the extent that the trial court erred, the error was harmless. Defendant previously waived objections to an LWOP sentence, and we reject defendant's constitutional challenge.

Affirmed.

---

[9] Defendant also points to waivers of other constitutional rights in other jurisdictions in both published and unpublished opinions in arguing that his waiver could not have carried over. We reject that argument without discussion.